UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT STRAKA, Individually, and on Behalf of All Others Similarly Situated, | § § § § § | |
| Plaintiff, | | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2192-B |
| METHODIST DALLAS MEDICAL CENTER AUXILIARY, ET AL., | § § § § § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Robert Straka's Motion to Conditionally Certify Collective Action and Authorize Notice. Doc. 44. For the following reasons, the Court **GRANTS** the motion.

## I.

## BACKGROUND[1]

This is a Fair Labor Standards Act (FLSA) overtime case. From April 2016 to March 2017, Straka worked as a nurse for Defendants (collectively "Methodist") in their Dallas healthcare facility. Doc. 46, Pl.'s App., 9. Like all Methodist nurses, Straka was entitled to, but not paid for, a thirty-minute meal break for each six-and-a-half-hour shift he worked. Doc. 45, Pl.'s Br. in Supp., 1. But nurses do not clock out for their meal breaks—Methodist keeps track of their meal breaks for them.

---

[1] The Court draws its factual account from the allegations contained in Straka's First Amended Complaint and from the parties' briefing on the Motion for FLSA Conditional Certification before the Court. Contested facts will be noted as such.

- 1 -

*Id.* How Methodist did so during Straka's employment varied. *Id.* at 3–4. When Straka started, Methodist used the automatic deduction system, whereby Methodist automatically deducted thirty minutes from each shift that exceeded six and a half hours. *Id.* If nurses worked through a meal break, they could override the automatic deduction. Doc. 50, Defs.' Resp., 4. But how nurses did so varied by department. *Id.* at 5–7. On October 30, 2016, Methodist replaced the automatic deduction system with the attestation system. *Id.* at 4. Under the attestation system, nurses clock in and out by phone. *Id.* Upon calling the assigned clock-out number, an automated prompt asks the nurse if he is clocking out for the day. *Id.* If so, the prompt asks if the nurse received a full, uninterrupted meal break during that particular shift. *Id.* at 5. If the nurse indicates that he did, thirty minutes are deducted from the nurse's time when calculating his pay. *Id.* But if the nurse did not take a meal break, no time is deducted. *Id.*

Straka alleges that work-related matters constantly interrupted his meal breaks. Doc. 45, Pl.'s Br. in Supp., 1. But Straka's claim is not based on actual interruptions—Straka claims Methodist violates the FLSA by not paying its nurses for their meal breaks during which they are subject to interruption but not actually interrupted. Doc. 55, Pl.'s Reply, 1–2. Straka asserts that the Court should grant his motion to conditionally certify because he is similarly situated with the approximately 4500 nurses in Methodist's Dallas, Richardson, Charlton, and Mansfield healthcare facilities who are likewise subject to interruptions during their unpaid meal breaks. Doc. 45, Pl.'s Br. in Supp., 1–3. Methodist argues that the variation across departments is too significant to consider all of its nurses similarly situated. Doc. 50, Defs.' Resp., 2. Straka's motion for conditional certification has been fully briefed and is ripe for review.

## II.

## LEGAL STANDARD

Section 216(b) of the FLSA "authorizes a plaintiff to bring a collective action on behalf of similarly situated persons, provided that any person who desires to become a part of the collective action files a written consent in the court." *Valcho v. Dall. Cty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008). When a plaintiff seeks to bring a collective action, district courts have the discretion to implement § 216(b) by facilitating notice to potential plaintiffs. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

The FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, but the FLSA does not define "similarly situated." And the Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 n.1 (5th Cir. 2010). But district courts in the Northern District of Texas have adopted the two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), which consists of a notice stage and a decertification stage. *See, e.g.*, *Oliver v. Aegis Commc'ns Grp., Inc.*, No. 3:08-cv-828-K, 2008 WL 7483891, at *2–3 (N.D. Tex. Oct. 30, 2008) (collecting cases).

Under the *Lusardi* approach, the first step—the notice stage—requires a preliminary determination, usually based only on the pleadings and submitted affidavits, of whether potential class members are similarly situated to the named plaintiff. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995). If they are similarly situated, then the court can conditionally certify the action and authorize notice to potential plaintiffs to opt in, and the suit "proceeds as a representative action throughout discovery." *Id.* at 1214. After discovery is largely complete, the

defendant may move for decertification, at which point the court proceeds to the second step—the decertification stage—and considers again whether the plaintiffs are similarly situated. *Id.* If the court finds that the plaintiffs who opted in are not similarly situated with the named plaintiff, then the class is decertified, the opt-in plaintiffs are dismissed without prejudice, and the original named plaintiff proceeds to trial on his individual claims. *Id.* at 1213–14.

At the notice stage, the court usually has minimal evidence, so "the determination is made using a fairly lenient standard and typically results in conditional certification of a representative class." *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D. Tex. 2012). Courts generally "require nothing more than substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. A factual basis, however, must exist, and a plaintiff must show some "identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency." *Jones*, 281 F.R.D. at 287. In conducting its analysis, the court has "a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Valcho*, 574 F. Supp. 2d at 622.

Courts do not often engage in the second step—the decertification process—until after "discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Mooney*, 54 F.3d at 1214. But there are circumstances in which courts will skip the first, lenient analysis. If parties have already conducted discovery on the certification issue, courts have less cause for leniency during the "notice" phase and may choose to apply a more stringent standard. *Valcho*, 574 F. Supp. 2d at 622; *Basco v. Wal-Mart Stores, Inc.*, No. Civ.A. 00–3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred

in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify [the] matter."); *Pfohl v. Farmers Ins. Grp.*, No. CV03–3080 DT (RCX), 2004 WL 554834, at *3 (C.D. Cal. Mar. 1, 2004) (proceeding directly to the decertification stage because discovery on the issue of certification was complete).

## III.

## ANALYSIS

### A.   *Conditional Certification Standard*

Before deciding whether the nurses are similarly situated, the Court first must decide whether to skip the lenient standard and apply the stringent standard because the parties have completed some amount of discovery. *See Mooney*, 54 F.3d at 1214. So far, Straka "has served, and Methodist responded to, 95 requests for production, 52 requests for admission, and 21 interrogatories, and Methodist produced 369 pages of documents" over a four-month period. Doc. 50, Defs.' Resp., 9. Additionally, Straka has taken three depositions, and Methodist has deposed Straka. *Id.* Methodist argues in its response that this amount of discovery is extensive and warrants applying the more stringent standard. *Id.* Methodist contends that Straka now "'should be able to better support [his] claims' and the Court 'can make an educated decision as to whether certifying the matter as a collective action would survive the decertification process.'" *Id.* (quoting *Parker v. Silverleaf Resorts, Inc.*, No. 3:14-CV-2075-B, 2017 WL 1550522, at *2–3 (N.D. Tex. May 1, 2017)). Straka contends that the Court should apply the more lenient standard because the Court limited the scope and length of discovery and Methodist has refused to produce evidence based on the Court's limitations. Doc. 55, Pl.'s Reply, 4–5.

The correct standard to apply in this case is not immediately clear because the amount of

discovery and the kind of discovery that has been completed fall between that of the cases applying the lenient standard and that of the cases applying the stringent standard. There has been more discovery here than in cases like *Hernandez v. Robert Dering Construction, LLC,* 191 F. Supp. 3d 675, 683 (S.D. Tex. 2016), in which the parties took no depositions, and *Williams v. Grayco Cable Services*, 187 F. Supp. 3d 760, 766 (S.D. Tex. 2016), in which the parties conducted no discovery before certification. But the amount of discovery in this case falls short of that in cases applying the more stringent standard, such as *Blake v. Hewlett-Packard Co.*, 4:11-CV-592, 2013 WL 3753965, at *5 (S.D. Tex. July 11, 2013), in which the parties conducted a handful of depositions and produced "thousands of pages of documents" within five months, and *Parker*, 2017 WL 1550522, at *4, in which discovery had "been ongoing for 28 months and . . . included responses to interrogatories, requests for admission, 175 requests for production of documents—involving the production of over 6,000 documents—and depositions of the four named Plaintiffs."

The Court finds the lenient standard more appropriate in this case. Discovery only lasted four months, and the Court limited its scope. Doc. 36. Although the parties have conducted some discovery, the Court refuses to apply the more stringent standard because discovery "is [not] largely complete and this "matter is [not] ready for trial." *Mooney*, 54 F.3d at 1214. And Methodist has withheld information that Straka says is critical to final certification because the Court limited discovery to conditional certification. Doc. 55, Pl.'s Reply, 4–5, 8–9. Without this evidence, the Court cannot "'make an educated decision' as to whether certifying the matter as a collective action would survive the decertification process"—discovery is not far along enough to justify skipping the lenient standard. *Parker*, 2017 WL 1550522, at * 6.

    B.    *Whether Methodist Nurses Are Similarly Situated*

Armed with the more lenient standard, the Court is prepared to decide whether the Methodist nurses are sufficiently similarly situated to warrant conditional certification. At the first stage in the *Lusardi* analysis, courts will conditionally certify if the plaintiff has made "substantial allegations that the putative class members were together victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. To make this determination the Court will consider whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Jones*, 281 F.R.D. at 287; *McKnight*, 756 F. Supp. 2d at 801. "A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino*, 716 F. Supp. 2d at 650.

1. Do Aggrieved Individuals Exist?

Straka has made substantial allegations regarding the existence of aggrieved Methodist nurses. Five nurses, including Straka, stated in their declarations that they were subject to interruptions during their meal breaks. Doc. 46, Pl.'s App., 9–23. The nurses also stated in their declarations that they know other nurses who have had similar experiences. *Id.* So far, seven nurses have opted into Straka's suit. Docs. 54, 57. This evidence sufficiently demonstrates aggrieved individuals exist. *See Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 769 (S.D. Tex. 2015) (granting conditional certification where only nine others opted into the named plaintiff's FLSA suit); *Corcione*, 2014 WL 6388039, at *1 (granting conditional certification where only three other nurses opted into the named plaintiff's FLSA suit).

Methodist makes several arguments in the aggrieved-individuals section of its brief that go

to the merits of Straka's case. Doc. 50, Defs.' Resp., 9–15. For example, Methodist argues that its meal-break policy is permissible under the FLSA. *Id.* The Court will not consider Methodist's merits arguments at this time because "it is not appropriate to require [Straka] to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated." *McKnight*, 756 F. Supp. 2d at 804. Straka need not prove his case to show that aggrieved individuals exist.

2.  <u>Are there Aggrieved Individuals Who Are Similarly Situated to Straka?</u>

A plaintiff "must demonstrate a reasonable basis for believing that a class of similarly situated persons exists." *Hernandez*, 191 F. Supp. 3d at 683. To make this determination, courts consider both job requirements and pay provisions. *Id.*; *Mason*, 2015 WL 4481233, at *4. The positions of the employees and the named plaintiff need only be similar, not identical. *Valcho*, 574 F. Supp. 2d at 621. Essentially, a sufficient "factual nexus" must exist between the named plaintiff's situation and that of the proposed class members. *Williams*, 187 F. Supp. 3d at 766.

Straka has demonstrated, and Methodist has not contested, that the proposed class members are similarly situated with respect to their job requirements. Straka's proposed class consists of hourly-paid nurses at the four Methodist healthcare facilities in the Dallas area. Doc. 45, Pl.'s Br. in Supp., 14. Straka claims that he and the proposed class members "are responsible for direct patient care and perform similar job duties in that respect." *Id.* Without any contrary argument from Methodist, the Court agrees that Straka and the proposed class members are similarly situated with regard to their job requirements.

Regarding the compensation scheme, "[a] unified plan, policy, or scheme need not be proved at the notice stage; rather, the existence of a plan or policy is probative evidence that similarly

situated plaintiffs exist." *McDonald v. Worldpac, Inc.*, No. 3:13-cv-4965-K, 2015 WL 12753533, at *4 (N.D. Tex. Sept. 8, 2015). But "[e]vidence of similar job duties and a single policy which violates the FLSA is sufficient to find putative class members similarly situated." *Williams*, 187 F. Supp. 3d at 767. If "there is no single decision, policy, or plan that affects the [p]laintiffs, the case will have enormous manageability problems." *Procter v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 281 (N.D. Tex. 2008) (internal quotation marks omitted).

FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice. *Rueda v. Tecon Servs., Inc.*, No. H-10-4937, 2011 WL 2566072, at *4 (S.D. Tex. June 28, 2011). Yet "geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement" if the employees were impacted by a common policy. *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730155, at *8 (S.D. Tex. Feb. 22, 2010). Accordingly, if there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate. *Flowers v. MGTI, LLC*, No. H-11-1235, 2012 WL 1941755, at *4 (S.D. Tex. May 29, 2012).

Straka asserts that the nurses at Methodist are similarly-situated because they were all subject to the automatic deduction system and then later the attestation system. Doc. 45, Pl.'s Br. in Supp., 15–16. Methodist argues that although their nurses are subject to the same payment systems, each department has specific ways of reporting missed meal breaks—in a paper log; through Methodist's intranet reporting system; or by communicating with a supervisor verbally, by text, or in an email. Doc. 50, Defs.' Resp., 17–18. Straka argues that these differences are too minor. Doc. 55, Pl.'s Reply, 2. But regardless, the fact that each department's reporting mechanism for missed meal breaks is different is not relevant because his claim is based on meal breaks during which nurses were subject

to interruption but were not actually interrupted. *Id.* And if nurses were not actually interrupted, they would not have reported a missed meal break. *Id.*

The Court agrees with Straka. To decide whether potential class members are similarly situated, the Court need only find that the class members are similar, not identical. *Valcho*, 574 F. Supp. 2d at 621. The potential class members here are similar because they report their time through the same system for every shift they work. The reporting variations across departments mean the proposed class members are not identical, but the differences are not significant enough to suggest the nurses are not similarly situated. But even if they were, how and whether the nurses reported missing their meal breaks has no bearing on whether they were subject to interruption during their meal breaks.

Straka also claims that the proposed class members are similarly situated because "Methodist has a policy of not compensating nurses for meal periods that were not interrupted even if the nurses remained on duty and were subject to interruption." Doc. 55, Pl.'s Reply, 1–2. And he argues that this policy violates the FLSA. *Id.* at 1 (citing *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 266 (5th Cir. 1998) (finding employees "were performing services for [the employer] even when their meal breaks were not interrupted; they were available to handle any conditions that might arise")). In support, Straka references five declarations made by him and four other Methodist nurses and the deposition of Judy Laister, Methodist's Director of Human Resources. Methodist argues that no such policy exists and that nurses only work during their breaks if they are available. Doc. 50, Defs.' Resp., 12. Methodist also contends that Straka's reliance on Ms. Laister's deposition is misplaced because Ms. Laister corrected the testimony Straka references. *Id.* at 12 n.59. And Methodist cites out-of-circuit authority to argue that such a policy would not violate the FLSA because "requiring nurses to be 'on

call' during a meal break, where there is no actual interruption, [does not] require compensation." *Id.* at 12–13 (quoting *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-CV-592-FDW-DSC, 2011 WL 4351631, at *6 (W.D.N.C. Sept. 16, 2011)).

Straka has demonstrated a reasonable basis for believing that Methodist's nurses are similarly situated because Methodist's policy of not paying its nurses for being subject to interruption during their meal breaks applies to all of its nurses. Straka's declarations indicate that Methodist expects its nurses to respond to patient needs during their meal breaks. Doc. 46, Pl.'s App., 9–23.[2] Ms. Laister's deposition testimony confirms that Methodist's policy of not paying nurses for their meal breaks during which they are subject to interruption applies to all Methodist nurses. *Id.* at 81–85.[3] The subsequent corrections to Ms. Laister's deposition may make her original testimony less reliable, but Methodist has not pointed to any binding case authority that requires the Court to completely disregard it at the conditional-certification stage. Indeed, now is not the time "to assess the merits

---

[2] *See, e.g.*, Doc. 46, Pl.'s App., 9–10 ("If [Methodist] was supposed to pay me when I was ready to address patient care issues, then I should have been paid for virtually all my meal periods because I, like other nurses, was available to address patient issues at all times, even during my meal period. . . . When I attempted to take a short meal break during my shifts, it was regularly interrupted. . . . As nurses we are all responsible for caring for our patients at all times, and we are required to respond to our patients when they call for us.").

[3] "Q: So if a nurse is on her meal break and another nurse or physician comes in and asks questions related to patient care and the nurse on her meal break answers those questions even though she's on her meal break, she would be following [Methodist's] standard of conduct . . . right? A: Yes. . . . Q: And that nurse would be behaving exactly the way Methodist wants them to behave even if she's on her meal break, by answering a question from a family member or a patient? A: Yes. . . . Q: And so when there is a question or a concern related to the health and safety of a patient when a nurse is on her meal break, Methodist trains [the nurses] to respond to those issues with a sense of urgency, correct? A: Yes. . . . Q: And so even if it's a nonemergency issue, the nurses are required to address those types of call lights within five minutes, right? A: Yes. And if it's an emergency call light issue, the nurses are required to address that even faster, right? A: Yes. Q: And they're required to address it even faster even when they're on their meal break? A: Yes. . . . Q: [Methodist] expect[s] nurses to respond to questions regarding patient care, even on their meal period? A: Yes. They're available to do so, yes."

of the claim by deciding factual disputes or making credibility determinations." *McKnight*, 756 F. Supp. 2d at 802. Straka need only show a reasonable basis that the nurses are similarly situated, and Ms. Laister's original deposition testimony and the declarations do that—Ms. Laister was speaking about all of Methodist's nurses, not about a particular facility or department. Doc. 46, Pl.'s App., 70–77. Lastly, Methodist's reliance on out-of-circuit authority is misplaced given the Fifth Circuit's holding that employees are entitled to be paid during meal breaks if they are subject to interruption. *Compare Bernard*, 154 F.3d at 266 (finding employees "were performing services for [the employer] even when their meal breaks were not interrupted; they were available to handle any conditions that might arise"), *with Blaney*, 2011 WL 4351631, at *6 (finding that "requiring nurses to be 'on call' during a meal break, where there is no actual interruption, [does not] require compensation or constitute a FLSA violation").

In sum, Straka has provided a reasonable basis that the Methodist nurses are similarly situated enough to warrant conditional certification. The Court notes that other district courts in this circuit have so concluded under similar circumstances. *See, e.g.*, *Ridley v. Regency Vill., Inc.*, No. CV H-17-974, 2018 WL 1334813, at *8 (S.D. Tex. Mar. 15, 2018) (finding proposed class members were similarly situated based on "evidence that the nurses were subject to interruption during [their meal] breaks"); *Abeldano v. HMG Park Manor of Westchase, LLC*, No. CV H-16-1044, 2016 WL 5848890, at *8 (S.D. Tex. Oct. 6, 2016) ("Plaintiffs have shown that putative class members are similarly situated, as they all have the same position and are subject to the same automatic deduction meal break policy."); *Corcione*, 2014 WL 6388039, at *4 (finding nurses were similarly situated based on evidence that "the automatic-deduction policy applied to them, and . . . that they were sometimes interrupted during their meal breaks").

### 3. Are There Similarly Situated Aggrieved Individuals Who Want to Opt in to the Lawsuit?

"[A] district court should satisfy itself that there are other employees . . . who desire to 'opt-in.'" *McKnight*, 756 F. Supp. 2d at 805. Other potential plaintiffs' "interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *Id.* "Even when a common owner has only a few small locations, there must be at least some minimal showing that employees at other locations are interested in joining the suit." *Id.*

Another district court faced a similar set of circumstances to the those before the Court in *McKnight*. There, the court considered whether to conditionally certify employees who worked at six different clubs. *McKnight*, 756 F. Supp. 2d at 797. The named plaintiffs worked at two of the six clubs. *Id.* at 807. Those plaintiffs, however, failed to provide evidence that any employee at one of the other clubs had an interest in joining the suit. *Id.* Even under the lenient standard, a plaintiff must do more than merely assert that he believes others are interested in joining. *Id.* Because the plaintiffs could not even make a minimal showing that employees at the other clubs were interested, the court conditionally certified a class of employees at only the two clubs where the named plaintiffs worked. *Id.*

Methodist argues that Straka has not met this factor because no nurses have opted in to his suit. Doc. 50, Defs.' Resp., 19–20. But since Methodist submitted its responsive briefing, seven nurses have opted in. Docs. 54, 57. Methodist's argument still has some merit though—none of those nurses work at Methodist's Richardson location. And none of the declarations mention the Richardson location—there is not even minimal evidence that anyone at Methodist's Richardson location would

be interested in opting in. So the Court **GRANTS** conditional certification with respect to Methodist's Dallas, Charlton, and Mansfield locations only.

## IV.

## CONCLUSION

For the foregoing reasons, Straka's Motion for Certification, Doc. 44, is **GRANTED** as follows:

1. The Court conditionally certifies this collective action.

2. The prospective class may include only current and former nurses at Methodist's Dallas, Charlton, and Mansfield healthcare facilities.

3. The Court **ORDERS** Defendants to produce the names and current or last known addresses of all individuals falling within the above defined class (Employee Information). Defendants shall provide the Employee Information in an electronic form that can be used by Straka in mailing out the notice. If the information is not stored electronically, Defendants shall provide it in written form.

4. The Court **ORDERS** Defendants to produce the Employee Information no later than April 27, 2018. If Defendants fail to provide the Employee Information by that date, the statute of limitations will be equitably tolled for each day after April 27, 2018 that Defendants fail to provide the Employee Information.

5. The Court **ORDERS** the parties to confer and submit an agreed Proposed Notice form and an agreed Proposed Consent to Join Form no later than April 20, 2018.

6. The opt-in period will last until 60 days following the date Defendants produce the Employee Information.

SO ORDERED

SIGNED: April 3, 2018

                                        _____
                                        JANE J. BOYLE
                                        UNITED STATES DISTRICT JUDGE